UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
THE RADIO, TELEVISION AND RECORDING ARTS
PENSION FUND and its BOARD OF TRUSTEES, and

THE RADIO, TELEVISION AND RECORDING ARTS
ANUITY FUND and its BOARD OF TRUSTEES,

**COMPLAINT**

                            Plaintiffs,

Case No. 1:26-cv-03909

               -against-

THIRTEEN PRODUCTIONS, LLC, and

WNET,

                        Defendants.

--------------------------------------------------------------------------X

Plaintiffs, the Radio, Television and Recording Arts Pension Fund and its Board of Trustees (collectively, the "Pension Fund"), and the Radio, Television and Recording Arts Annuity Fund and its Board of Trustees (collectively, the "Annuity Fund," and also with the Pension Fund, "Plaintiffs" or the "Funds"), by their attorneys, Slevin & Hart, P.C., hereby complain of Defendants Thirteen Productions, LLC ("Thirteen") and WNET (collectively, "Defendants") as follows:

## Introduction

1.     This is an action to compel Defendants to produce the records of WNET so that Plaintiffs may conduct a full payroll audit and ensure that Defendants have made all required contributions to the Funds.

## Jurisdiction and Venue

2.     This Court has subject matter jurisdiction under ERISA §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f); and 28 U.S.C. § 1331.

23242239v6

3.    Personal jurisdiction exists over Defendants pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

4.    Personal jurisdiction further exists over Defendants in that the principal place of business for both Defendants is in this District.

5.    Venue lies in this Court under 28 U.S.C. § 1391, and ERISA § 502(e)(2), 29 U.S.C. §§ 1132(e)(2), in that this is the District in which the breach took place, as this is the District from which Defendants have refused to comply with Plaintiffs' audit, and further both Defendants reside and may be found in this District.

6.    Upon information and belief, venue is also proper in this district under 28 U.S.C. § 1391(b)(1) and (2).

## The Parties

7.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

8.    The Funds are "plans," "employee pension benefit plans," and "multiemployer plans," within the meanings of ERISA §§ 3(2), (3), and (37), 29 U.S.C. §§ 1002(2), (3), and (37), respectively.  The Funds are administered in West Trenton, New Jersey.

9.    The Trustees are "fiduciaries" within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).  The Trustees bring this action on behalf of the Funds and their participants and beneficiaries pursuant to ERISA § 502(a)(3), 29 U.S.C. §§ 1132(a)(3).

10.    At all times relevant hereto, Defendants were "employers" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5).

11.    Thirteen is a limited liability company ("LLC") organized under the laws of the State of Delaware and, upon information and belief, has its principal place of business at 825 Eighth Avenue, New York, NY  10005.

23242239v6

12.     WNET is a New York education corporation chartered by the Board of Regents of the University of the State of New York.  WNET's principal place of business is 825 Eighth Avenue, 14th Floor, New York, NY.

**Background Facts**

13.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

14.     At all times relevant to this action, Thirteen was party to one or more collective bargaining agreements ("CBA") with the Radio and Television Engineers Union Local 1212, IBEW, AFL-CIO (the "Union") obligating Thirteen to make contributions to the Funds on behalf of its employees who were performing covered work.

15.     In addition to covering work performed by Thirteen within the stated jurisdiction of the CBA, the CBA further includes as covered work for which contributions are required to the Funds, co-productions, work for independent post-production companies, lighting and electrical work in remote locations and work for WLIW or other subsidies of WNET, among other things.

16.     Plaintiffs must rely, in the first instance, upon the accuracy of the contributing employers, such as Thirteen, in reporting hours worked and paid, and in properly calculating and reporting the contributions owed to the Funds on behalf of those employees performing work for which contributions are required under the CBA.

17.     Without accurate information, Plaintiffs cannot determine the amounts due to the Funds, and the Funds cannot determine the participants' eligibility for benefits.

18.     WNET is the parent company of Thirteen.

19.     In this regard, in WNET's Consolidated Financial Statements posted on WNET's website, WNET identifies Thirteen as one of its "controlled subsidiaries."  *See* WNET and Subsidiaries, Consolidated Financial Statements (Together with Independent Auditors' Report),

3

Years Ended June 30, 2024 and 2023, *available at* https://www.wnet.org/wp-content/uploads/sites/1/2025/02/WNET-Financial-Statements-FY24.pdf, at p. 7 (last accessed May 12, 2026).

20.     In those same financial statements, WNET identifies itself as Thirteen's sole member. *Id.*

21.     Further, WNET listed Thirteen's obligations to various pension plans, *including the Pension Fund that is a Plaintiff to this action*, in its financial statements. *Id.* at 18.

22.     By letters from Thirteen's counsel to Plaintiffs' counsel dated February 17, 2026 (the "February 17 Letter") and March 19, 2026 (the "March 19 Letter," and, collectively with the February 17 Letter, the "Thirteen Letters"), Thirteen expressly acknowledged that WNET is its parent company.

23.     WNET lists Thirteen's leadership among WNET's own leadership. *See, e.g.*, WNET, The WNET Group Leadership, *available at* https://www.wnet.org/annual-review-2025/the-wnet-group-leadership/ (last accessed May 12, 2026).

24.     Upon information and belief, Defendants maintain a centralized payroll system, whereby all payroll records for both Defendants are maintained together, such that Thirteen does not have its own separate payroll records; rather, all payroll records for both Thirteen and WNET are maintained in the same system. Accordingly, Thirteen's payroll records are WNET's payroll records and vice versa.

25.     In the March 19 Letter, Thirteen addressed, but did not dispute, the Funds' understanding that Thirteen and WNET maintain a centralized payroll system.

26.     If Defendants were to produce only the payroll records for those employees who are claimed to be employees of Thirteen, it would require Defendants to self-select those records,

23242239v6

with the Funds having to take Defendants at their word that any payroll records not produced were for employees who did not perform covered work requiring contributions to the Funds.

27.     Nothing under the law or the Funds' governing documents require the Funds to take Defendants' word that they have properly selected all payroll records for those employees for whom contributions are required.  To the contrary, the case law confirms that the Funds are entitled to audit all of a contributing employer's payroll records, regardless of whether the employer contends that those records are for employees for whom they have no contribution obligations. *See, e.g., Cent. States Pension Fund v. Cent. Transport, Inc.*, 472 U.S. 559 (1985); *N.Y. State Nurses Ass'n Benefits Fund v. Nyack Hosp.*, 46 F.4th 97 (2d Cir. 2022).

28.     Further, the Funds' governing documents grant the Trustees the power to determine which records are "pertinent" and "necessary" for a payroll audit, and the Trustees have determined that WNET's records are pertinent and necessary.

29.     In this regard, each of the Funds to which Thirteen agreed to contribute are governed by, *inter alia*, their respective Amended and Restated Agreement and Declaration of Trust (individually, the "Pension Fund Trust Agreement" and "Annuity Fund Trust Agreement," and, collectively, the "Trust Agreements").

30.     Section 5.3(ee) of each of the Trust Agreements gives the Trustees the power "[t]o verify the accuracy of statements and information submitted by the Employer and Employees on Contribution forms, claim forms, and otherwise."  That Section goes on to provide that "[i]n furtherance of this right and duty, the duly appointed auditor for the Fund shall, upon request, be permitted to examine the payroll records, wage cards, *or any other pertinent records* of any persons covered by a Collective Bargaining Agreement or Participation Agreement."  (emphasis added).

5

31.    Additionally, Section 5.3(b) of each of the Trust Agreements gives the Trustees the power "[t]o establish the policies and the rules pursuant to which this Agreement and the Plan are to be operated and administered, including rules relating to the collection of Contributions and other payments, and amend such from time to time as necessary or appropriate."

32.    Pursuant to their authority under Section 5.3(b) of the Trust Agreements, the Trustees have adopted a Policy for Collection of Delinquent Contributions and Payroll Audit Policy (the "Audit Policy").

33.    Section 1.1.C.2 of the Audit Policy grants the Trustees "[t]he right to audit the financial records of the employers, including but not limited to, payroll ledgers, federal and state tax returns, IRS Forms 941 ***and any such other books and records of the employers that are necessary in order for the auditors to ascertain that the proper contributions have been made***" (emphasis added).

34.    Section 5.3(z) of each of the Trust Agreements gives the Trustees the power "[t]o construe the terms and provisions of this Agreement, the Plan and all other supplementary rules or regulations."  That Section goes on to provide that "[t]he construction adopted by the Board of Trustees in good faith shall be binding upon the Employers, the Union, Employees, Participants and beneficiaries and all other persons who may be involved or affected to the maximum extent permitted by law."

35.    Consequently, for the purposes of conducting a payroll audit, the question of what records are "pertinent," within the meaning of Section 5.3(ee) of the Trust Agreements, and/or "necessary," within the meaning of Section 1.1.C.2 of the Audit Policy, is to be decided by the Trustees and their determination is binding upon, *inter alia*, Defendants.

6

23242239v6

36.    The Second Circuit has held that an employer is bound to those "provision[s] of the trust agreement" relating to "the right of the fund trustees to audit the employer's records" because "Fund trustees have a fundamental duty to locate and take control of fund property -- a duty for which the right to audit is crucial" as "the right to audit to make sure contributing employers have contributed in accordance with their obligations" is "essential to [the Trustees'] management of the Funds . . . ." *Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38, 41 (2d Cir. 1996).

37.    Thus, Defendants are bound to those provisions in the Trust Agreements and Audit Policy relating to the Funds' right to audit, which includes the right to audit those records determined to be "pertinent" and/or "necessary" by the Trustees.

38.    Further, there is no dispute as to the Funds rights to audit the records of, at minimum, Thirteen, the signatory employer.  In this regard, in the February 17 Letter, Thirteen specifically acknowledged "[t]he Funds' audit rights" and "[t]he audit authority granted to the Funds under the governing documents . . . ."  The February 17 Letter further took the position that "Thirteen remains committed to cooperating with the Funds' legitimate audit activities and fulfilling its obligations under the collective bargaining agreement," such that Thirteen agreed to "provid[e] full and complete payroll information for all employees who perform work for Thirteen, including those who are covered by the collective bargaining agreement and those who are not . . . ."  Likewise, in the March 19 Letter, Thirteen confirmed that it "remains willing to cooperate with the Funds' audit request to the full extent required by the governing documents and will make available any additional payroll records and any other records of the Employer, as that term is properly defined, that are necessary for the Funds' auditors to complete their review."

7

23242239v6

39.    Pursuant to their undisputed authority under the Trust Agreement, the Funds selected Thirteen for an audit of its payroll records for the period from January 1, 2022, through December 31, 2024 (the "Payroll Audit").

40.    As part of the Payroll Audit, the Funds' auditor requested that Thirteen produce the payroll records of WNET, Thirteen's parent company, to ensure that Defendants had properly paid contributions for all employees for whom there is an obligation to contribute.

41.    After Defendants refused to produce the records of WNET employees, the Funds, through counsel, made repeated demands that Defendants produce WNET's records.

42.    Despite those demands, in the Thirteen Letters, Thirteen refused to produce WNET's records.

43.    In the Thirteen Letters, Thirteen did not dispute that it has the ability to produce WNET's payroll records; to the contrary, in the February 17 Letter, Thirteen took the position that "Thirteen respectfully declines to produce such records" and, in the March 19 Letter, Thirteen took the position that "Thirteen declines to produce payroll records of WNET" and that "Thirteen declines the Funds' demand to produce the complete payroll records of WNET."

44.    Thus, Thirteen could produce WNET's relevant payroll records, but has simply refused to do so, in violation of its obligations under the Trust Agreements and Audit Policy.

45.    Thirteen's refusal to produce WNET's records is not only a violation of its obligations under the Trust Agreements and Audit Policy, but it further violates the past practices established between the parties.

46.    In this regard, in prior payroll audits conducted by the Funds, Thirteen produced WNET's payroll records without dispute.

23242239v6

47.    Thus, to the extent the Trust Agreements and Audit Policy leave any ambiguity as to whether Thirteen is required to produce WNET's payroll records, and although any such ambiguity is left to the discretion of the Trustees because it is the Trustees who are empowered to determine which records are "pertinent" and/or "necessary," the established past practice of Thirteen producing WNET's records for audit further supports the Trustees' interpretation because "evidence of past practice . . . may be used to resolve ambiguities in the language of an ERISA plan." *Maddaloni v. Pension Tr. Fund of the Pension*, 648 F. Supp. 3d 430, 438 (E.D.N.Y. 2023).

48.    The Trustees' interpretation is further supported by the fact that the CBA obligates Thirteen to contribute to the Funds for certain work performed for entities other than Thirteen, such as in conjunction with co-productions, work for independent post-production companies, lighting and electrical work in remote locations, and work for WLIW or other subsidies of WNET, among other things.

49.    In the March 6 Letter, Thirteen took the position that, notwithstanding these additional contribution obligations, the Funds were not entitled to WNET's payroll records, but rather should accept Thirteen's representation that there were no individuals outside of Thirteen performing these types of work.  Thus, Thirteen's position amounted to little more than that the Funds must take Defendants at their word that WNET's payroll records would not identify additional work for which contributions are owed.  As established above, the Funds are entitled to audit all of Defendants' payroll records and are not required to take Defendants at their word that they have made all required contributions.

50.    In the March 19 Letter, prior to addressing the merits of its obligations to produce WNET's payroll records, Thirteen attempted to frame the issue in the context of a "financial crisis confronting Thirteen" following "the cancelation of federal funding to the now dissolved

9

23242239v6

Corporation for Public Broadcasting," which Thirteen claimed was causing it to be "facing severe financial challenges . . . ." Thus, it appears that Thirteen's newly-discovered reticence in producing WNET's records, which it has done previously without dispute, is out of a concern that the Payroll Audit will identify additional contributions that Defendants are obligated to make, but which they apparently contend they may not be able to afford in light of a financial struggle for public broadcasters.

51.     Although Plaintiffs do not dispute or take lightly the financial issues that public broadcasters like Defendants currently face, that does not change the fact that Defendants are obligated to pay contributions for all covered work performed by their covered employees, regardless of their financial status.

52.     Further, while Defendants' contribution obligations to the Funds are not and cannot be made dependent upon a subjective evaluation of financial priorities, it is also the case that Defendants' funding as public broadcasters is of no greater importance than ensuring that Defendants' employees have received all contributions necessary to ensure that they receive the retirement benefits from the Funds that they have earned through their work.

**Count I**
**Equitable Relief – Compelling Thirteen's Production of WNET's Payroll Records**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**
**(Plaintiffs v. Thirteen)**

53.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

54.     Under the Trust Agreements and Audit Policy, as well as its established past practice of doing so, Thirteen is obligated to produce the payroll records of WNET that have been determined to be "pertinent" and "necessary" for the Payroll Audit by the Trustees.

10

23242239v6

55.     By refusing to produce WNET's payroll records for the Payroll Audit, Defendant has breached its obligations under the Trust Agreements and Audit Policy.

56.     ERISA § 502(a)(3)(A), 29 U.S.C. § 1132(a)(3)(A), permits a plan fiduciary to bring an action to obtain "appropriate equitable relief" to redress any violations, or to enforce, the terms of the Funds' governing documents.

57.     Accordingly, Plaintiffs are entitled to equitable relief compelling Defendants to produce WNET's payroll records.

58.     Plaintiffs seek relief as specified in the Prayer for Relief.

**Count II**
**Equitable Relief – Compelling WNET to Produce its Payroll Records as Joint Employer**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**
**(Plaintiffs v. WNET)**

59.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

60.     A non-signatory employer that is a joint employer with a signatory employer may be liable with the signatory for contribution obligations.  *See, e.g., Hardy v. Kaszycki & Sons Contractors*, 870 F. Supp. 489, 494 (S.D.N.Y. 1994).

61.     Under federal regulations, two entities qualify as joint employers where they "share or codetermine the employees' essential terms and conditions of employment," which requires "such substantial direct and immediate control over one or more essential terms or conditions of their employment as would warrant finding that the entity meaningfully affects matters relating to the employment relationship with those employees."  29 C.F.R. § 103.40(a).

62.     Upon information and belief, discovery will establish that WNET maintains sufficient control over the terms and conditions of the employment of Thirteen's employees such that WNET and Thirteen are joint employers of Thirteen's employees.

63.     That WNET maintains such control is rendered plausible by the facts that WNET is Thirteen's parent company, WNET includes Thirteen's leadership as being part of WNET's own leadership, WNET and Thirteen maintain centralized payroll systems, and WNET is the sole member of Thirteen's LLC.

64.     As a joint employer with Thirteen, WNET is an "employer" along with Thirteen, as it is jointly liable for all contribution related obligations under the CBA, including the obligation to comply with the Payroll Audit by producing its own payroll records.

65.     Plaintiffs seek relief as specified in the Prayer for Relief.

**Count III**
**Equitable Relief – Compelling WNET to Produce its Payroll Records as Single Employer**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**
**(Plaintiffs v. WNET)**

66.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

67.     "[A] collective bargaining agreement may be enforced against non-signatory employers if the employers constitute a 'single employer' and if the employees of the companies constitute a single appropriate bargaining unit." *Brown v. Sandimo Materials*, 250 F.3d 120, 128 n.2 (2d Cir. 2001).

68.     "In ascertaining whether a group of companies is a 'single employer' for these purposes, we look to four factors, none of which is controlling and not all of which need be present: [1] interrelation of operations, [2] common management; [3] centralized control of labor functions and [4] common ownership." *Id.*

69.     The determination of single employer status is a question of fact. *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996).

12

70.     Upon information and belief, discovery will establish that WNET and Thirteen constitute a single appropriate bargaining unit such that they are a single employer.

71.     While no single factor is controlling, and not all need to be present, the facts pled herein support that satisfaction of each of the four factors of the single employer test is, at minimum, plausible.

72.     It is, at minimum, plausible that WNET and Thirteen maintain interrelated operations, common management, and centralized control of labor functions as evidenced by the fact that WNET includes Thirteen's leadership as being part of WNET's own leadership and that WNET and Thirteen maintain centralized payroll systems.

73.     Further, it is undisputed that WNET and Thirteen maintain common ownership considering that WNET holds itself out as Thirteen's parent company and sole member.

74.     As a single employer with Thirteen, WNET is an "employer" along with Thirteen, as it is jointly liable for all contribution related obligations under the CBA, including the obligation to comply with the Payroll Audit by producing its own payroll records.

75.     Plaintiffs seek relief as specified in the Prayer for Relief.

**Count IV**
**Equitable Relief – Compelling WNET to Produce its Payroll Records as Alter Ego**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**
**(Plaintiffs v. WNET)**

76.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

77.     The Second Circuit has held that "[i]f two companies are deemed alter egos of each other, then each is bound by the collective bargaining agreements signed by the other." *Lihli*, 80 F.3d at 748.

13

23242239v6

78.    The hallmarks of the alter ego doctrine include whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Id.*

79.    However, "[n]o single factor is controlling and the existence of all factors is not necessary to establish alter ego status." *Div. 1181 Amalgamated Transit Union - N.Y. Emples. Pension Fund v. N.Y. Dep't of Educ.*, No. 13-cv-9112 (PKC), 2014 U.S. Dist. LEXIS 123782, at *13 (S.D.N.Y. Aug. 27, 2014).

80.    The determination of alter ego status is a question of fact. *Lihli*, 80 F.3d at 747 (2d Cir. 1996).

81.    Upon information and belief, discovery will establish that WNET and Thirteen are alter egos.

82.    While no single factor is controlling, and not all need to be present, the facts pled herein support that satisfaction of the alter ego factors is, at minimum, plausible.

83.    It is, at minimum, plausible that WNET and Thirteen maintain substantially identical management as evidenced by the fact that WNET includes Thirteen's leadership as being part of WNET's own leadership.

84.    It is, at minimum, plausible that WNET and Thirteen maintain substantially identical business purpose, operation, equipment, and customers as evidenced by the fact that both are in the business of public broadcasting, as evidenced by Thirteen's reference to the public broadcasting financial crisis in its March 19 Letter seeking to avoid its obligations to produce WNET's payroll records.

14

85.     It is, at minimum, plausible that WNET and Thirteen maintain substantially identical supervision as evidenced by the fact that that WNET and Thirteen maintain centralized payroll systems, and WNET's leadership includes leaders of Thirteen.

86.     Further, it is undisputed that WNET and Thirteen maintain substantially identical ownership considering that WNET holds itself out as Thirteen's parent company and sole member.

87.     As an alter ego of Thirteen, WNET is an "employer" along with Thirteen, as it is jointly liable for all contribution related obligations under the CBA, including the obligation to comply with the Payroll Audit by producing its own payroll records.

88.     Plaintiffs seek relief as specified in the Prayer for Relief.

## Prayer for Relief

**WHEREFORE,** Plaintiffs pray that the Court grants relief as follows:

1.     Entering judgment against Defendant and compelling Defendants to produce WNET's payroll records as requested by the Funds to conduct the Payroll Audit; and

2.     Restraining and enjoining Defendants and their officers, agents, servants, attorneys, successors, assigns and all persons acting on their behalf or in conjunction with them from refusing to comply with the Payroll Audit and/or any other audits that Plaintiffs may conduct of Defendants payroll records as permitted by the Trust Agreements and Audit Policy.

3.     Awarding to Plaintiffs their attorneys' fees and costs incurred in this action.

4.     Retaining jurisdiction of this case pending full compliance with this Court's Orders.

5.     Granting Plaintiffs such further and other relief as the Court may deem just and proper.

23242239v6

Dated: May 12, 2026                           Respectfully submitted,

                                              /s/ Meredith B. Golfo
                                              Meredith B. Golfo
                                              SLEVIN & HART, P.C.
                                              Attorneys for Plaintiffs
                                              1300 Connecticut Avenue, N.W., Suite 700
                                              Washington, DC  20036
                                              (202) 797-8700
                                              (202) 234-8231 (fax)
                                              mgolfo@slevinhart.com

A copy of this Complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, as required by ERISA § 502(h), 29 U.S.C. § 1132(h).

16

23242239v6